IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**LEVESTER JONES, JR.**                                                                                    **PLAINTIFF**

V.                          Case No. 2:11CV00224-BD

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**[1]                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Levester Jones filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), alleging an onset date of December 15, 2008. (Tr. 118-27)  As cause for his disability, Mr. Jones alleged back problems, high blood pressure, arthritis, and right hand problems. (Tr. 120, 139)

Mr. Jones's claim was denied initially and upon reconsideration. (Tr. 72-74, 77-78)  Subsequently, a hearing was held on August 19, 2010, before an Administrative Law Judge ("ALJ").  Mr. Jones appeared at the hearing with his attorney and testified.  A vocational expert also attended and testified. (Tr. 32-69)  The ALJ issued a decision unfavorable to Mr. Jones on October 8, 2010 (Tr. 16-31), and on November 8, 2011, the Appeals Council denied a request for review. (Tr. 1-4)  Thus, the ALJ's decision became the Commissioner's final decision.

Mr. Jones now seeks  judicial review of the Commissioner's decision under

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the  Social Security Administration.  She has been substituted for named Defendant Michael J. Astrue under Fed.R.Civ.P. 25.

§ 205(g) of the amended Act.  The parties have filed briefs, and the case is ready for decision.[2]

At the time of the hearing, Mr. Jones was 44 years old with a high school education.  (Tr. 37)  He had last worked on December 15, 2008.  (Tr. 38)

The ALJ found that Mr. Jones's back problem was a severe impairment, as that term is used in social security disability determinations.  (Tr. 23)  She also found that he did not have an impairment, or a combination of impairments, that met or equaled an impairment listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 23)  The ALJ found that Mr. Jones's subjective allegations of pain and inability to function were not fully credible (Tr. 25) and that he retained the capacity to perform a full range of light work,[3] except that he would be unable to use *either arm* for overhead reaching and would require a sit/stand option, with the flexibility to change positions between sitting and standing.  (Tr. 23)

The ALJ found that Mr. Jones was unable to return to his past relevant work, which ranged from medium to very heavy work.  After hearing the testimony of the vocational expert, the ALJ further found that there were jobs that Mr. Jones could still perform, such as an assembler, which is considered light unskilled work, and lampshade assembler, which is considered sedentary unskilled work.  (Tr. 28)  Thus, the ALJ

---

[2] Both parties have consented to this Court's jurisdiction.

[3] See C.F.R. 404.1567(b).

concluded that Mr. Jones was not disabled under the Act for the relevant time period. (Tr. 28)

In this appeal, Mr. Jones argues that the hypothetical posed to the vocational expert did not include all of his limitations, specifically his inability to stoop or bend and to handle or finger objects.  He further argues that the ALJ improperly judged his credibility in discounting his level of pain.  Last, he argues that the job identified by the vocational expert requires skills that are inconsistent with the limitations included in the ALJ's hypothetical, specifically the limitation on his ability for overhead reaching. (Plaintiff's Brief, pp. 13-15)

Medical evidence in the record indicates that in November of 2005, Mr. Jones underwent a C3-4, C4-5 and C5-6 anterior cervical diskectomy and fusion with allograft and Atlantis plate stabilization.  (Tr. 206)  A follow-up examination in January 2006, revealed good position of the bone grafts with residual spasticity and clonus of the left lower extremity. (Tr. 206)

Mr. Jones returned to work after his 2005 surgery, but on July 9, 2007, while lifting a heavy coil, he experienced an acute onset of back pain and subsequently developed pain extending into both legs.  He sought medical attention the same day and was treated with a Medrol Dose Pak.  According to the medical history, Mr. Jones underwent two weeks of physical therapy with no improvement.  (Tr. 205)  An MRI performed on July 18, 2007, revealed stenosis at L4-5 associated with L4 foraminal

narrowing with facet and ligamentous hypertrophy, as well as a broad disc bulge which had not significantly changed since 2005.  There was also a far lateral disc bulge on the right at L3-4 and a narrowing of the L3 neural foramen.  (Tr. 206)

John D. Brophy, M.D., examined Mr. Jones on August 13, 2007.  Dr. Brophy diagnosed lumbar myofascial pain associated with lumbar spondylosis.  He suggested continued conservative management with a trial work conditioning program and prescribed Feldene.  Dr. Brophy cleared Mr. Jones to return to light work, but limited him to lifting no more than ten pounds and he was not to engage in repetitive stooping or bending.  (Tr. 206)

During an August 30, 2007 office visit, however, Dr. Brophy noted that Mr. Jones had experienced a 50% improvement in his back pain since starting the Feldene.  Mr. Jones had elected not to participate in the work conditioning program recommended by Dr. Brophy.  He asked Dr. Brophy to clear him to return to work at full duty.  (Tr. 207)

On June 18, 2009, Mr. Jones underwent a consultative physical examination performed by David Lee Webber, D.O.  Dr. Webber noted muscle spasms in Mr. Jones's lumbar spine and muscle weakness in the right hand.  (Tr. 217).  Dr. Webber diagnosed low back pain with radiculopathy, status post disc removal x 3 in the neck, hypertension, weakness in the right hand, and depression.  He concluded that Mr. Jones suffered from "severe" limitations in his physical capabilities.  (Tr. 218)

In her decision, the ALJ identified two jobs that Mr. Jones could perform despite his back problems – assembler and lampshade assembler. (Tr. 28) Even though the job of assembler was eliminated by the vocational expert because it would not accommodate Mr. Jones's need for a stand/sit option (Tr. 67), the ALJ included assembler as a job that Mr. Jones could perform. (Tr. 28) That leaves only the job of lampshade assembler, a job the vocational expert identified as unskilled and sedentary, with a stand/sit option that could accommodate a limit as to overhead reaching *with the right, dominant arm*. (Tr. 68)

Mr. Jones argues that the ALJ's hypothetical failed to include limitations on stooping or bending, but this argument fails for two reasons. First, the job of lampshade assembler does not require repetitive stooping or bending, so the omission of those limitations from the hypothetical was not error. See Dictionary of Occupational Titles ("DOT"), Description No. 739.684-0994; see also SSR 85-15 (stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body). And second, Dr. Brophy's limitation on Mr. Jones's ability to stoop and bend was imposed on August 13, 2007. Later, at his August 30, 2007 appointment with Dr. Brophy, Mr. Jones reported that his pain level had reduced by 50%. And more significantly, at the August 30 appointment, he asked Dr. Brophy to release him to work at "full duty." (Tr. 207) Thus, the limitation on stooping and bending was arguably not in force after August 30, 2007.

However, there remains a problem with the prospect of Mr. Jones working as a lampshade assembler.  Lampshade assembly requires *frequent reaching*.  See DOT 739.684-094  The ALJ determined that Mr. Jones was, "unable to use *either arm* for overhead reaching." (Tr. 23)(emphasis added)  The Commissioner argues that "reaching" does not necessarily include "overhead reaching." (Defendant's Brief, p. 15)  But that explanation is inadequate under the circumstances of this case.

The problem here is that the hypothetical posed to the vocational expert included a limitation on overhead reaching –  but only as to overhead reaching with the "right, dominant arm." (Tr. 67)  Yet the ALJ's decision notes that Mr. Jones was "unable to use *either arm* for overhead reaching." (Tr. 23)(emphasis added)  Notably, the restriction on any overhead reaching, *i.e.*, with either arm, is consistent with the medical assessment in the record.  (Tr. 224, 228)

Certainly, a vocational expert can expand on a DOT job requirement description.  So, for example, a vocational expert can explain that even though the DOT describes a job as requiring "frequent reaching," that particular job, in fact, does not require *overhead* reaching.  But here, in the hypothetical posed, the vocational expert was asked to assume that a worker could perform jobs where *one arm* was incapable of overhead reaching.  (Tr. 67)

It may be that lampshade assembling can be performed without overhead reaching.  This finding, however, is not one that this Court can or should make.  The case

must be remanded because the decision of the ALJ is internally inconsistent to a degree that the Court cannot conclude that there is substantial evidence to support the decision.

Accordingly, the Commissioner's decision is reversed and remanded for action consistent with this opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED, this 29th day March, 2013.

_____
UNITED STATES MAGISTRATE JUDGE